# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **CHRISTOPHER HARTSFIELD**, 5435 Amandas Oak Ct. Cincinnati, OH 45248 and **HEIDI HARTSFIELD**, 5435 Amandas Oak Ct. Cincinnati, OH 45248<br><br>Plaintiffs,<br><br>vs.<br><br>**PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICING**, c/o Corporation Service Company 50 W. Broad St., Ste. 1330 Columbus, OH 43215<br><br>Defendant. | Case No.<br><br>Judge<br><br>**COMPLAINT FOR DAMAGES** |

Plaintiffs Christopher Hartsfield and Heidi Hartsfield ("Plaintiffs"), through counsel, for their *Complaint for Damages* (the "Complaint") against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH"), state as follows:

### THE BASIS FOR THIS COMPLAINT

1. Plaintiffs are suing their mortgage servicer, PHH, because of PHH's inability to properly implement a settlement agreement. PHH failed to properly apply Plaintiffs' monthly mortgage payments and threatened to file a foreclosure action against Plaintiffs. Because of PHH's breach of the settlement agreement and pattern of conscious disregard for Plaintiffs' rights, Plaintiffs have incurred attorneys' fees and costs and suffered emotional distress damages.

1

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiffs are the owners of residential real property, located at and commonly known as 5435 Amandas Oak Dr., Cincinnati, OH 45246 (the "Home").

3. Plaintiffs currently maintain the Home as their primary, principal residence, and have so maintained the Home for all times relevant to the allegations of the Complaint.

4. PHH is a foreign corporation incorporated under the laws of the State of New Jersey that maintains its headquarters and principal place of business at 1 Mortgage Way, Mount Laurel, NJ 08054.

5. PHH is the servicer of a note executed by Plaintiffs (the "Note") and of a mortgage on the Home that secures said note (the "Mortgage") (collectively, the "Loan"). PHH has been the servicer of the Loan since May 1, 2019.

6. PHH services the Loan on behalf of U.S. Bank, N.A. as Trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-4 ("U.S. Bank").

7. Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"), and

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (FDCPA).

9. This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

10. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

11. This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.1, *et seq.* ("Regulation X").

12. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

13. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

14. Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

15. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

16. The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

17. Plaintiffs assert claims for relief against PHH for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

18. Plaintiffs have a private right action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

19. Congress enacted the FDCPA to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a).

20. Plaintiffs have a private right of action under the FDCPA pursuant to 15 U.S.C. § 1692k(a) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

21. Plaintiffs additionally assert a statutory claim for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA) and a common law claim for breach of contract.

### FACTUAL BACKGROUND

22. On or about February 14, 2006, Plaintiffs took out the Loan for the purchase of the Home.

23. On June 19, 2013, Christopher Hartsfield filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Ohio, Case No. 1:13-bk-12919 (the "Bankruptcy Action").

24. During the pendency of the Bankruptcy Action, Plaintiffs and their mortgage servicer Ocwen Loan Servicing, LLC ("Ocwen") reached an agreement to modify the Loan and Plaintiffs made their monthly payments through the Chapter 13 Trustee.

25. On June 5, 2018, the Chapter 13 Trustee filed a Notice of Final Cure Mortgage Payment pursuant to Fed. Bankr. R. 3002.1 in the Bankruptcy Action.

26. On June 18, 2018, Ocwen, on behalf of U.S. Bank, filed a Response to the Notice of Final Cure that wrongfully claimed that Plaintiffs were delinquent in the amount of $5,934.70 and the Loan was due for the March 1, 2018 payment.

27. On June 22, 2018, Ocwen, on behalf of U.S. Bank, filed an Amended Response to the Notice of Final Cure that indicated that Plaintiffs were actually current on the Loan as of June 1, 2018.

28. Starting with the June 2018 mortgage payment, Plaintiffs began making their monthly payments directly to Ocwen, instead of making conduit mortgage payments.

29. Despite timely and properly making their monthly payments to Ocwen, Plaintiffs received several Notices of Default advising them that the Loan was delinquent.

30. On or about February 1, 2019, Plaintiffs, through counsel, sent a notice of error requesting that Ocwen correct the accounting on the Loan ("NOE #1") via Certified Mail to Ocwen.

31. Instead of responding to NOE #1, on February 28, 2019, Ocwen, on behalf of U.S. Bank, initiated a foreclosure action against Plaintiffs in the Hamilton County Court of Common Pleas, Case No. A 1901082 (the "Foreclosure Action").

32. On April 29, 2019, Plaintiffs initiated a civil action against Ocwen in the United States District Court for the Southern District of Ohio, Case No. 1:19-cv-00310-TSB (the "Federal Action").

33. In the complaint filed in the Federal Action, Plaintiffs asserted the above mentioned factual information and brought claims against Ocwen for violations of federal law.

34. PHH became the servicer of the Loan on or about May 1, 2019 following the merger of Ocwen and PHH in 2018.

35. On September 26, 2019, Plaintiffs and PHH reached a tentative settlement to resolve the Foreclosure Action and Federal Action (collectively, the "Actions").

36. On or about November 8, 2019, Plaintiffs and PHH entered into a confidential Settlement and Release Agreement (the "Settlement Agreement") to dismiss the Actions.

37. Pursuant to the terms of the Settlement Agreement, on October 21, 2019, PHH offered Plaintiffs a permanent loan modification that modified the Loan effective September 1, 2019 (the "2019 Modification").

38. The Settlement Agreement expressly authorizes the award of reasonable attorneys' fees to fully compensate the prevailing party to any action arising out of the agreement.

39. Despite making their monthly payments to PHH pursuant to the terms of 2019 Modification, Plaintiffs received several notices claiming that their payments were past due (the "Past Due Notices"). A copy of the Past Due Notices are attached as **Exhibit 1**.

40. On or about September 18, 2020, PHH sent Plaintiffs a Notice of Default claiming that Plaintiffs were two months past due and stating that PHH had assessed late charges and property inspection fees. A copy of the Notice of Default is attached as **Exhibit 2**.

41. On or about November 25, 2020, Plaintiffs, through counsel, sent a notice of error requesting that PHH correct the accounting on the Loan and remove the improper charges and fees ("NOE #2") to PHH at the address designated by PHH for receipt of requests for information pursuant to 12 C.F.R. § 1024.36(b) and notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Address") via Certified Mail. A copy of NOE #2 is attached as **Exhibit 3**.

42. On or about November 25, 2020, Plaintiffs, through counsel, sent two (2) separate requests for information (the "RFIs") to PHH at the Designated Address via Certified Mail, specifically:

6

    a. A request for information pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2) and 12 C.F.R. § 1026.36(c)(3), seeking information as to the identity of and contact information for the owner of the Loan and a payoff statement for the Loan ("RFI #1"); and,

    b. A request for information pursuant to 12 C.F.R. § 1024.36 requesting information and/or documents related to the Loan, including, a life of loan transaction history, servicing notes, any broker's price opinions, the physical location of the original note, a copy of the original note, Premier's two most recent escrow analyses, a reinstatement quote, and information related to loss mitigation ("RFI #2").

A copy of RFI #1 is attached as **Exhibit 4**; a copy of RFI #2 is attached as **Exhibit 5**.

43. PHH received NOE #2 December 7, 2020. *See*, Exhibit 3.

44. On December 11, 2020, PHH reported to credit bureaus that the Loan was 30 days past due, causing Plaintiffs' credit score to drop significantly. A copy of a printout showing this information is attached as **Exhibit 6**.

45. On or about January 11, 2021, PHH sent correspondence to Plaintiffs in response to NOE #2 (the "Response to NOE #2"). A copy of the Response to NOE #2 is attached as **Exhibit 7**.

46. In the Response to NOE #2, PHH admits that it caused the errors and stated:

> We have processed necessary reversals and re-applied the payments in accordance with the terms of the Modification Program. Currently, the account is due for the January 2021 payment. We apologize for the inconvenience caused.

*See*, Exhibit 7.

47. Regarding the improper late charges and property inspection fees, PHH claimed that it capitalized the outstanding fees and expenses at the time of the Modification. PHH agreed to waive the improper late charges but refused to waive $75.00 in property inspection fees. PHH charged property inspection fees on August 15, September 10, September 25, September 27, November 11, and December 9, 2019. At least, the final two property inspection fees in the amount

of $30.00 should not have been charged as they were assessed after PHH executed the Modification. *See*, Exhibit 7.

## DAMAGES INCURRED BY AND IMPACT UPON PLAINTIFFS

48. Plaintiffs have simply wanted to be able to enjoy the benefits of the Settlement Agreement and 2019 Modification, but PHH failed to properly implement these agreements and threatened to file a foreclosure action against Plaintiffs.

49. PHH's actions directly and proximately caused the following actual damages to Plaintiffs:

   a. PHH has assessed improper fees and/or charges to the Loan;

   b. PHH had to retain and pay legal counsel to submit the RFIs and NOE #2 to PHH, pay postage costs for the mailing of those documents, and review the responses to those documents; and,

   c. PHH reported negative information to credit bureaus when it was prohibited from doing so, causing a significant drop in Plaintiffs' credit score;

   d. Plaintiffs suffered a delay in the rehabilitation of their credit and they hoped and believe that the Modification would afford them the opportunity to to begin the process of improving their credit standing;

   e. PHH's repeated failure to properly account for Plaintiffs' monthly payments and negative credit reporting have caused Plaintiffs to experience extreme emotional distress that has resulted in loss of sleep, anxiety, depression, and other significant emotional distress.

50. PHH's actions are part of a pattern and practice of behavior in violation of Plaintiffs' rights and in abdication and contravention of PHH's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

51. As of the filing of this Complaint, PHH has had Seven Hundred Forty Four (744) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments,

escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/

data-research/consumer-complaints.

52. Plaintiffs have reviewed the CFPB's consumer complaint database and identified other similar alleged RESPA violations by PHH against other borrowers. In particular, Plaintiffs have reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 8**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that PHH has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

## COUNT ONE:
## VIOLATIONS OF THE FDCPA, 15 U.S.C. §§ 1692, *et seq.*

53. Plaintiffs restate and incorporate all of the statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten herein.

54. Plaintiffs are each a "consumer" as each is a natural person who is obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

55. The Loan is a "debt" as it is an obligation or alleged obligation of Plaintiffs to pay money arising out of a transaction primarily for personal, family, or household purposes - the purchase of the Home. 15 U.S.C. § 1692a(5).

56. PHH is a "debt collector" because it regularly collects or attempts to collect on the Loan and other loans owed to creditors, such as U.S. Bank. 15 U.S.C. § 1692a(6).

57. When PHH (as Ocwen) acquired the servicing rights to the Loan, Plaintiffs were in default of their obligations thereunder. *See*, 15 U.S.C. § 1692a(6)(F)(iii). Ocwen began servicing

the loan on or about September 4, 2011 and at that time the loan was contractually in default for the June 2011 payment.

58. PHH, through its Past Due Notices and Notice of Default, has treated the Loan as if it was in default. *See*, Exhibits 1 and 2.

59. The FDCPA prohibits false, deceptive, or misleading representations in connection with the collection of any debt. 15 U.S.C. § 1692e. The FDCPA provides examples of conduct that violate the provision, such as prohibiting the use of: (1) False representations of the character, amount, or legal status of any debt (15 U.S.C. § 1692e(2)(A)); (2) The threat to take any action that cannot legally be taken (15 U.S.C. § 1692e(5)); and, (3) False representations or deceptive means to collect or attempt to collect any debt (15 U.S.C. § 1692e(10)).

60. PHH violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10) by falsely representing in the Notice of Default that the Loan was past due for two monthly payments, wrongfully threatening to file a foreclosure action against Plaintiffs, and falsely representing that Plaintiffs owed late charges and other fees and/or expenses.

61. PHH's false representations are contradicted by the Response to NOE #2 wherein PHH admitted that misapplied Plaintiffs' monthly payments. *See*, Exhibit 7.

62. The FDCPA prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

63. PHH violated 15 U.S.C. §§ 1692f through its actions in sending the Notice of Default to Plaintiffs despite its inability to properly implement the terms of the Settlement Agreement and 2019 Modification.

10

64. PHH's actions have caused Plaintiffs to suffer actual damages, as outlined, *supra*, at ¶ 49. PHH's actions required Plaintiffs to incur attorneys' fees and costs related to the RFIs and NOE #2 in order to obtain information related to the Loan and correct errors.

65. PHH's pattern of failing to properly account for Plaintiffs' monthly payments explains why Plaintiffs' receipt of the Notice of Default directly and proximately caused Plaintiffs to suffer extreme emotional distress driven by the fear that PHH's actions would lead to the loss of and eviction from the Home which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

66. As a result of PHH's actions, PHH is liable to Plaintiffs for actual damages and statutory damages. 15 U.S.C. § 1692k(a)(1).

67. Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3).

**COUNT TWO:**
**VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. § 2605(k)**

68. Plaintiffs restate and incorporate all of the statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten herein.

69. "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

70. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

71. A servicer must respond to a notice of error by either:

11

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

72. A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

> (B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.
>
> (C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

73. "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

74. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

75. NOE #2 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibit 3.

76. Plaintiffs sent NOE #2 to PHH at the Designated Address and PHH received NOE #2 at such address. *See*, Exhibit 3.

77. Through NOE #2, Plaintiffs alleged that PHH committed the following errors in the servicing of the Loan:

   a. Error pursuant to 12 C.F.R. § 1024.35(b)(1) for failing to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments;

   b. Error pursuant to 12 C.F.R. § 1024.35(b)(2) for failing to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law;

   c. Error pursuant to 12 C.F.R. § 1024.35(b)(3) for failing to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 C.F.R. § 1026.36(c)(1); and,

   d. Errors pursuant to 12 C.F.R. § 1024.35(b)(5) for the imposition of fees for which there was no reasonable basis to impose.

*See*, Exhibit 3.

78. In the Response to NOE #2, PHH claimed that it capitalized the outstanding fees and expenses at the time of the Modification, including six property inspection fees assessed to the Loan on August 15, September 10, September 25, September 27, November 11, and December 9, 2019. *See*, Exhibit 7.

79. The final two property inspection fees (November 11 and December 9, 2019) were assessed after PHH executed the Modification on November 8, 2019. *See*, Exhibit 7.

80. The Response to NOE #2 indicates that PHH performed little to no investigation into the errors asserted by NOE #2, let alone a reasonable investigation. PHH states "[t]he Modification Program was completed in December 2019," which indicates that PHH merely looked at its system of record instead of reviewing the actual signed Modification. A reasonable investigation would have alerted PHH to the fact that it improperly assessed at least the final two property inspection fees.

81. The Response to NOE #2 did not fulfill PHH's obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as PHH did not admit that any errors occurred as alleged in NOE #2 related to the property inspection fees.

82. The Response to NOE #2 did not fulfill PHH's obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear from the face of the Response to NOE #2 that PHH did not perform a reasonable investigation into the errors alleged through NOE #2 related to the property inspection fees prior to determining that no such errors occurred.

83. PHH's failure to perform a reasonable investigation into and otherwise properly respond to NOE #2 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and, as a result, Plaintiffs have suffered actual damages as detailed, *supra*, at ¶ 49.

84. PHH's actions are part of a pattern or practice of behavior in conscious disregard for Plaintiffs' rights.

85. As a result of PHH's actions, PHH is liable to Plaintiffs for statutory damages and actual damages as further described, supra. 12 U.S.C. § 2605(f)(1).

86. Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE:
### VIOLATIONS OF 12 C.F.R. § 1024.35(i) AND 12 U.S.C. § 2605(k)

87. Plaintiffs restate and incorporate all of the statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten herein.

88. "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

89. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

90. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

91. 12 C.F.R. § 1024.35(i)(1) explicitly provides that "[a]fter receipt of a notice of error, a servicer may not, for 60 days, furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the notice of error."

92. NOE #2 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibit 3.

93. Through NOE #2, Plaintiffs alleged that PHH committed the following errors in the servicing of the Loan:

   a. Error pursuant to 12 C.F.R. § 1024.35(b)(1) for failing to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments;

   b. Error pursuant to 12 C.F.R. § 1024.35(b)(2) for failing to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law;

   c. Error pursuant to 12 C.F.R. § 1024.35(b)(3) for failing to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 C.F.R. § 1026.36(c)(1); and,

   d. Errors pursuant to 12 C.F.R. § 1024.35(b)(5) for the imposition of fees for which there was no reasonable basis to impose.

*See*, Exhibit 3.

94. Plaintiffs explicitly informed PHH of the express prohibitions on reporting adverse information to credit reporting agencies contained in 12 C.F.R. § 1024.35(i)(1). *See*, Exhibit 3.

95. Plaintiffs sent NOE #2 to PHH at the Designated Address and PHH received NOE #2 at such address on December 7, 2020. *See*, Exhibit 3.

96. Despite receipt of NOE #2 on December 7, 2020, PHH reported the Loan as 30 days past due on December 11, 2020. *See*, Exhibit 6.

97. This negative reporting directly and proximately caused Plaintiffs' credit score to drop significantly. *See*, Exhibit 6.

98. PHH's actions constitute a violation of 12 C.F.R. § 1024.35(i) and 12 U.S.C. § 2605(k) and, as a result, Plaintiffs have suffered actual damages as detailed, *supra*, at ¶ 49.

99. PHH's actions are part of a pattern or practice of behavior in conscious disregard for Plaintiffs' rights.

100. As a result of PHH's actions, PHH is liable to Plaintiffs for statutory damages and actual damages as further described, supra. 12 U.S.C. § 2605(f)(1).

101. Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT FOUR:
## BREACH OF CONTRACT

102. Plaintiffs restate and incorporate all of the statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten herein.

103. The Settlement Agreement and 2019 Modification are each a contract between Plaintiffs and PHH.

104. Plaintiffs have made each and every monthly payment according to the terms of the Settlement Agreement and 2019 Modification.

105. PHH materially breached the contracts by failing to implement the contracts, failing to properly apply Plaintiffs' monthly payments, imposing improper fees and charges, and sending the Notice of Default.

106. PHH's actions have caused Plaintiffs to suffer actual damages, as outlined, *supra*, at ¶ 49.

107. The Settlement Agreement expressly authorizes the award of reasonable attorneys' fees to fully compensate the prevailing party to any action arising out of the agreement.

108. As a result of PHH's conduct, PHH is liable to Plaintiffs for actual damages and attorneys' fees and costs incurred in connection with this action.

**COUNT FIVE:**
**VIOLATIONS OF THE RMLA, R.C. 1322.01,** *et seq.*

109. Plaintiffs restate and incorporate all of the statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten herein.

110. PHH is subject to the requirements of the RMLA, and does not qualify for the exemptions listed in R.C. 1322.04.

111. PHH is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(AA).

112. "No person ... shall act as a … mortgage servicer … without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a … mortgage servicer ... in this state." R.C. 1322.07(A).

113. PHH, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

114. PHH is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License Nos. RM.804016.000, RM.804016.016-BR, RM.804016.018-BR, RM.804016.021-BR, RM.804016.024-BR, and RM.804016.025-BR. R.C. 1322.01(GG).

115. Plaintiffs are each a buyer, as the Loan is serviced by PHH, a mortgage servicer. R.C. 1322.01(H).

116. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.* cannot:

a. Make false or misleading statements of a material fact, omissions of statements required by state or federal law, or false promises regarding a material fact, through advertising or other means, or engage in a continued course of misrepresentations. R.C. 1322.40(B); and

b. Engage in conduct that constitutes improper, fraudulent, or dishonest dealings. R.C. 1322.40(C).

117. PHH's failure to implement the terms of the Settlement Agreement and 2019 Modification, failure to properly apply Plaintiffs' monthly payments, imposition of improper fees and charges, and actions in sending the Notice of Default constitute violations of R.C. 1322.40(B)-(C).

118. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and:

a. Safeguard and account for any money handled for the buyer. R.C. 1322.45(A)(1);

b. Act with reasonable skill, care, and diligence; R.C. 1322.45(A)(3); and,

c. Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan. R.C. 1322.45(A)(4).

119. A registrant, licensee, or person required to be registered or licensed under R.C. 1322 *et seq.* cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

120. PHH's failure to implement the terms of the Settlement Agreement and 2019 Modification, failure to properly apply Plaintiffs' monthly payments, imposition of improper fees and charges, and actions in sending the Notice of Default constitute violations of R.C. 1322.45(A)(1), (3), and (4).

121. PHH's actions have caused Plaintiffs to suffer actual damages, as outlined, *supra*, at ¶ 49.

122. As a result of PHH's conduct, PHH is liable to Plaintiffs for actual damages, punitive damages, and reasonable attorneys' fees and costs incurred in connection with this action. R.C. 1322.52.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Christopher Hartsfield and Heidi Hartsfield pray that this Court grants judgment against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services, and award them the following:

A. Actual damages in an amount to be determined at trial for the allegations contained in Counts One through Five;

B. Statutory damages of One Thousand Dollars ($1,000.00) for the violations of the FDCPA contained in Count One;

C. Statutory damages of Two Thousand Dollars ($2,000.00) for each violation of RESPA contained in Counts Two and Three;

D. Punitive damages as to Count Five;

E. For attorneys' fees and costs as to Counts One through Five; and,

F. For such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Brian D. Flick*
Brian D. Flick (0081605)
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiffs Christopher Hartsfield and Heidi Hartsfield*